UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRANSAMERICA LIFE INSURANCE              CIVIL ACTION
COMPANY

VERSUS                                   NO: 14-2738

PEGGY CARSKADON BAGALA, ET AL.           SECTION: R

## ORDER AND REASONS

Transamerica Life Insurance Company filed this interpleader action to determine the beneficiaries of annuity contract number M032084643. Defendants-in-interpleader and counter-claimants Dawn, Darlene, Dena, and Buddy Bagala (collectively, the "Bagala children") move for summary judgment seeking to recover death benefit proceeds under the contract. For the reasons that follow, the Court grants the motion.

## I.   BACKGROUND

This case involves an annuity contract issued by Merrill Lynch Life Insurance Company, a predecessor in interest of Transamerica, to Shelby Bagala ("Mr. Bagala"). The Bagala children allege that because the contract names them as Mr. Bagala's beneficiaries, they are entitled to the death benefit proceeds payable under the agreement. By contrast, Mr. Bagala's widow,

Peggy Bagala ("Mrs. Bagala"), contends that she is a co-owner of the annuity contract and that she should therefore receive the death benefit proceeds instead of the named beneficiaries.

## A.    Annuity Contract Purchase

Mr. and Mrs. Bagala applied for the annuity contract on July 18, 2003.[1] After discussing the matter with their longtime financial advisor, William McCrery, the Bagalas executed the necessary "Application for Variable Annuity" with Merrill Lynch.[2]   That application named Mr. Bagala the annuity's owner.[3] It did not designate a co-owner.[4] Nonetheless, Mrs. Bagala signed her name in a box labeled "Co-Owner's signature," while Mr. Bagala signed as the owner.[5]

The annuity's initial premium was $1,354,232.56.[6] The Bagalas funded this premium by exchanging five pre-existing annuity contracts pursuant to 28

---

[1] R. Doc. 48-7 ("Application").

[2] Application; R. Doc. 48-5 at 6-10 ("McCrery Deposition").

[3] Application at 1.

[4] *Id.*

[5] *Id.* at 6.

[6] *Id.* at 1.

U.S.C. §1035.[7]  To effect these transactions, Mr. and Mrs. Bagala executed five

"Request for 1035 Exchange" forms, one for each of the annuity contracts that

would be used to purchase the new annuity.[8]  Each form lists Mr. Bagala as the

owner of the annuity being exchanged, and the co-owner is listed as "N/A."[9]

Mr. Bagala signed each form as the owner, and Mrs. Bagala signed in a box

labeled "Co-owner's signature or Spouse (if community property state)."[10]

The Bagala's financial advisor, McCrery, described the annuity purchase

in his deposition testimony.  McCrery testified that he and a Merrill Lynch

insurance and estate planning specialist discussed the annuity at length with

Mr. and Mrs. Bagala.[11]  According to McCrery, the Bagalas decided to omit

Mrs. Bagala from the annuity for tax planning purposes.[12]  Specifically,

McCrery stated: "As a tax planning strategy, we wanted these [death benefit]

dollars to go outside of the estate upon the death of Shelby. . . .  The reason the

---

[7] Application; R. Doc. 48-8.  Section 1035 permits an insurance company's client to exchange an annuity for another annuity issued by the company without subjecting any income attributable to the replaced annuity to tax obligations.  *See* 26 U.S.C. § 1035 ("No gain or loss shall be recognized on the exchange of . . . an annuity contract for an annuity contract or for a qualified long-term care insurance contract. . . .").

[8] R. Doc. 48-8 at 1-5.

[9] *Id.*

[10] *Id.*

[11] McCrery Deposition at 7-10.

[12] *Id.* at 7-8.

children were named in this contract and not Peggy is because we were trying to avoid the inheritance tax."[13]  When asked whether Mrs. Bagala could have understood these discussions to mean that she would be a co-owner, McCrery responded: "I don't think she could have gotten that understanding based on the way we spoke.  Clearly the four children were the only beneficiaries on the contract. . . ."[14]

## B.   Issuance of the Annuity Contract

On July 30, 2003, Merrill Lynch issued annuity contract M032084643.[15] The contract provides that "[o]n the death of an Owner prior to the Annuity Date, we will pay to the beneficiary the death benefit representing the entire interest in the Contract."[16]  Consistent with the application, the contract identifies Mr. Bagala as the only owner and annuitant.[17]  It also lists the four Bagala children as Mr. Bagala's beneficiaries and provides that each shall receive any death benefit payable under the policy in equal measure.[18]  Mrs.

---

[13] *Id.*

[14] *Id.* at 9-10.

[15] R. Doc. 48-1 ("Annuity Contract").

[16] *Id.* at 16.

[17] *Id.* at 6.

[18] *Id.*

Bagala is not named as a co-owner, co-annuitant, or beneficiary. The contract also provides a ten-day "right to review," in which the owner can cancel the contract and receive a full refund of the contract value.[19]  There is no evidence that Mr. Bagala sought cancellation or raised any concerns about the written contract's terms.

Merrill Lynch sent Mr. Bagala regular correspondence about the annuity contract.  For instance, shortly after Merrill Lynch issued the contract, it provided Mr. Bagala with an "Annuity Summary."[20]  This document identifies Mr. Bagala as the owner and the Bagala children as his beneficiaries.[21]  Over time, Mr. Bagala contributed over $500,000 in additional premiums to the annuity.[22]  For each contribution, Merrill Lynch provided Mr. Bagala a "Confirmation of Activity" form.[23]  Merrill Lynch also sent Mr. Bagala quarterly financial statements.[24]  Like the application, the contract, and the

---

[19] *Id.* at 4.

[20] R. Doc. 48-2 ("Annuity Summary").

[21] *Id.*

[22] R. Doc. 48-4.

[23] *Id.*

[24] R. Doc. 48-3.

"Annuity Summary," the correspondence that Mr. Bagala received consistently identified him as the owner and the four Bagala children as his beneficiaries.[25]

The annuity contract authorized Mr. Bagala to modify the terms of the agreement, including by adding a new owner or a co-owner to the contract. Under a section entitled "General Provisions," the contract provides: "Upon notice to us you may assign the Contract to a new Owner. . . .  Only spouses may be co-owners."[26]  Further, advisor McCrery testified that the Bagala's financial advisors at Merrill Lynch reviewed the annuity contract "every single year" and that "prior to [Mr. Bagala's] death, [Mr. and Mrs. Bagala] could have changed anything along the way since 2003."[27]  There is no evidence that Mr. Bagala ever sought to add Mrs. Bagala as a co-owner or made any other change to the annuity contract.

---

[25] R. Docs. 48-3 and 48-4.

[26] Annuity Contract at 10.

[27] McCrery Deposition at 8.

### C.   This Lawsuit

Mr. Bagala died on January 14, 2014.[28] On August 22, 2014, Mrs. Bagala notified Transamerica of a purported "clerical error" in the annuity contract and argued that she was entitled to all death benefit proceeds.[29] In response, Transamerica filed this interpleader lawsuit, naming Mrs. Bagala and each of the four Bagala children as potential parties in interest.[30] Later, Transamerica deposited the disputed proceeds with the registry of the court and was dismissed, leaving Mrs. Bagala and the Bagala children as the only parties to this lawsuit.[31]

Each of the Bagala children filed an answer and a claim, alleging that under the express terms of the annuity contract, each is entitled to one-quarter of the death benefit proceeds.[32] Mrs. Bagala also filed an answer and a claim, in which she alleges that the written contract's ownership designation is erroneous.[33] Mrs. Bagala contends that she co-owns the annuity because she

---

[28] R. Doc. 1-2 at 2.

[29] *Id.* at 4.

[30] R. Doc. 1.

[31] R. Doc. 57.

[32] R. Doc. 16 (Buddy Bagala); R. Doc. 17 (Darlene and Dena Bagala); R. Doc. 19 (Dawn Bagala).

[33] R. Doc. 5.

signed the annuity application as a co-owner and because the Bagalas used community property to fund the initial premium.[34]   Citing a contractual provision that provides that "the beneficiary of the co-owner spouses must be the surviving spouse," Mrs. Bagala contends that, as Mr. Bagala's widow, she is the rightful beneficiary and is entitled to the entire death benefit.[35]

On September 15, 2015, three of the Bagala children filed a motion for summary judgment and set it for submission on September 30.[36]   On September 24, Mrs. Bagala moved for an extension of time to respond.[37]   The Court denied the motion for failure to show good cause and ordered Mrs. Bagala to resubmit a good cause request for the extension no later than September 25.[38]   Although Mrs. Bagala did not file the appropriate motion until September 29,[39] the Court granted the motion and gave Mrs. Bagala until October 20 to file an opposition to the Bagala children's motion for summary judgment.[40]   The Court warned, however, that "there will be no further

---

[34] *Id.* at 2.

[35] *Id.* at 2-3, 5-6.

[36] R. Doc. 48.

[37] R. Doc. 49.

[38] R. Doc. 51.

[39] R. Doc. 54.

[40] R. Doc. 55.

extensions with regards to this response deadline."[41]  Mrs. Bagala still has filed

no opposition to the Bagala's children's motion.  Mrs. Bagala did use the time

extension to file an amended answer and claim, in which she alleges fraud on

the part of the Bagalas' Merrill Lynch advisor and seeks reformation of the

contract.[42]  But she has produced no evidence to either substantiate her

allegations or to demonstrate an issue of material fact.


## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact

exists, the Court considers "all of the evidence in the record but refrains from

making credibility determinations or weighing the evidence."  *Delta & Pine*

*Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir.

2008).  All reasonable inferences are drawn in favor of the nonmoving party,

---

[41] *Id.*

[42] R. Doc. 60.

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at

325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils.*, Inc., 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

## III.  DISCUSSION

### A.    The Annuity Contract

The Bagala children argue that the plain terms of the annuity contract indicate that Mr. Bagala is the owner and that the Bagala children are his only beneficiaries.  Thus, they contend that there is no dispute of material fact and that they are entitled to all proceeds as a matter of law.[43]  By contrast, Mrs. Bagala alleges that she co-owns the annuity and is therefore entitled to the entire death benefit.[44]

Under Louisiana law, an insurance policy is a contract that constitutes the law between the parties, and it must be interpreted in accordance with the general rules of contract interpretation set forth in the Louisiana Civil Code. *Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999) (citing La. Civ. Code art. 1793); *Ledbetter v. Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La. 1996); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736 (La. 1994).  The extent of insurance coverage is determined by the parties' intent as reflected by words

---

[43] R. Doc. 48-1 at 9-11.

[44] R. Doc. 60 at 5-6.

in the policy.  La. Civ. Code art. 2045; *Peterson*, 729 So. 2d at 1028 (citing *Ledbetter*, 665 So. 2d at 1169).  If the policy wording is clear and it expresses the intent of the parties, the agreement must be enforced as written.  La. Civ. Code art. 2046; *Ledbetter*, 665 So.2d at 1169.

Here, the contract identifies Mr. Bagala as the policy's only owner and annuitant.  The contract further provides that the four Bagala children are Mr. Bagala's only beneficiaries and that each is entitled to an equal share of any death benefit payable under the agreement.  The contract does not identify Mrs. Bagala as a co-owner, co-annuitant, or beneficiary.  Indeed, Mrs. Bagala is not named anywhere in the agreement.  The contract is therefore clear: Mr. Bagala is the owner, and the Bagala children are his beneficiaries.  Thus, the Bagala children are entitled to the disputed death benefit proceeds.

Mrs. Bagala gives two arguments to avoid this conclusion.  First, she alleges that because she is Mr. Bagala's spouse, she necessarily co-owns the annuity under the contract's ownership rules.  Specifically, Mrs. Bagala cites a provision in the "General Provisions" section of the contract, which states:

> OWNERSHIP OF A CONTRACT: Unless another Owner is named by the purchaser, the purchaser is the Owner.  Upon notice to us you may assign the Contract to a new Owner.  The assignment terminates all prior beneficiary designations.  A new Owner's age must be less than 85 years.  Only spouses may be co-owners.  The beneficiary of the co-owner spouse must be the surviving spouse.  The age of the oldest co-owner must be less than 85 years.

> Ownership rights must be exercised by the co-owners jointly.  Co-owners are deemed to be joint tenants with right of survivorship unless they indicate otherwise.[45]

Contrary to Mrs. Bagala's contention, this provision does not mandate that spouses be co-owners; nor does it purport to alter or displace the ownership and beneficiary designations that are set forth elsewhere in the contract. Instead, it provides a set of generally applicable rules that limit who can be designated a co-owner and explain how co-owners should exercise their governance rights.  Because the plain terms of the contract indicate that Mr. Bagala is the annuity's only owner, this provision has no bearing here.

Second, Mrs. Bagala alleges that she is a co-owner or "co-purchaser" because the Bagalas allegedly funded the annuity's initial premium using community property assets.  As an initial matter, Mrs. Bagala provides no evidence that the 1035 exchanges that funded the initial premium involved the expenditure of community funds.  The bare allegations in her amended answer and claim are insufficient to create an issue of material fact in this regard. More importantly, even if the annuity were purchased with community funds, Mrs. Bagala still would have no claim to its death benefit proceeds.  Under Louisiana law, "the proceeds of life insurance, if payable to a named

---

[45] Annuity Contract at 10.

beneficiary other than the estate of the insured, are *sui generis* and not considered to be part of the estate of the insured." *New York Life Ins. & Annuity Corp. v. Cannatella*, 550 F. App'x 211, 214 (5th Cir. 2013) (citing *T.L. James & Co., Inc. v. Montgomery*, 332 So. 2d 834, 847 (La. 1975)).  As such, "life insurance proceeds go to the named beneficiary in accordance with the provisions of the life insurance contract, without regard to community claims. . . ." *Fowler v. Fowler*, 861 So. 2d 181, 186 (La. 2003).  In other words, life insurance proceeds are "exclusively owned by the named beneficiary." *Cannatella*, 500 F. App'x at 214 (citing *Allianz Life Ins. Co. of N. Am. v. Oates*, 756 So. 2d 677. 679 (La. App. 2 Cir. 2000)); *see also* 15 Louisiana Civil Law Treatise, Insurance Law and Practice § 8:13, at 849-53 (4th ed. 2012) ("[T]he proceeds themselves are payable to the properly designated beneficiary and form no part of the community. . . .").  Here, the contract names the Bagala children as the beneficiaries and provides for each to be paid an equal share of the death benefit.  Thus, regardless of how the initial annuity premium was funded, the Bagala children own the proceeds and Mrs. Bagala has no claim.[46]

---

[46] To the extent that Mrs. Bagala alleges that the use of community assets to purchase the annuity makes her a co-owner under the annuity contract's terms, that argument fails as well.  The general provisions of the contract provide that "[u]nless another Owner is named by the purchaser, the purchaser is the Owner."  Here, the contract expressly names Mr. Bagala as the only owner.  So even if Mrs. Bagala could be deemed a "co-purchaser," the annuity is owned by Mr. Bagala alone.

## B.      Reformation

Mrs. Bagala alleges that, to the extent the written contract does not designate her a co-owner, it does not reflect the actual agreement between the Bagalas and Merrill Lynch and should be reformed accordingly.[47]  In support, Mrs. Bagala cites the application that the Bagalas executed in order to purchase the annuity.  Though the application--like the contract--lists Mr. Bagala as the sole owner, Mrs. Bagala signed the document in a box labeled "Co-Owner."[48]  According to Mrs. Bagala, this demonstrates that the parties intended co-ownership or, alternatively, that Merrill Lynch fraudulently represented to the Bagalas that Mrs. Bagala would co-own the annuity.

"As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d 1235, 1240 (La. 2006) (citations omitted).  Mrs. Bagala has not identified any evidence of mutual mistake or fraud.  This is not a case in which the policy fails to reflect the parties' mutual intent because of a typographical or scrivener's error.  *See e.g.*, *id.* at 1240-41 (reforming contract to correct clerical error in insurance contract).  Rather, it is clear that neither Mr. Bagala nor

---

[47] R. Doc. 60.

[48] Application at 6.

Merrill Lynch intended Mrs. Bagala to co-own the annuity.  In his deposition testimony, Merrill Lynch advisor McCrery testified that after discussing the matter at length, the Bagalas decided to omit Mrs. Bagala from the annuity contract in order to "avoid the inheritance tax."[49]  When asked whether Mrs. Bagala could have understood these discussions to mean that she would be a co-owner, McCrery responded: "I don't think she could have gotten that understanding based on the way we spoke.  Clearly the four children were the only beneficiaries of the contract. . . . ."[50]  The application and written contract support this assertion, as both documents name Mr. Bagala as the only owner and designate the four Bagala children as his beneficiaries.  While Mrs. Bagala may have believed that should would co-own the annuity, "[s]uch unilateral error is not a sufficient basis to reform an insurance contact." *LeMarie v. Lone Star Life Ins. Co.*, No. CIV.A. 00-0570, 2000 WL 1678009, at *9 (E.D. La. Nov. 7, 2000), *aff'd*, 265 F.3d 1059 (5th Cir. 2001); *see also Dredging Supply Co. v. Am. First Ins. Co.*, No. CIV.A. 06-1744, 2008 WL 3851587, at *5 (E.D. La. Aug. 13, 2008) ("The summary judgment record betrays Dredging Supply's assertion that it was the *mutual* intent of the parties that chartered vessels would be covered by Great American's policy.").

---

[49] McCrery Deposition at 7-8.

[50] *Id.* at 9-10.

Neither has Mrs. Bagala identified any evidence that Merrill Lynch committed fraud.  Under Louisiana law, an action for fraud against a party to a contract requires: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Associates*, 798 So. 2d 60, 64 (La. 2001).  As noted, McCrery's deposition testimony indicates that the Bagalas decided, as a tax planning strategy, to designate Mr. Bagala as the annuity's only owner.  Though Mrs. Bagala alleges that she and her husband wanted co-ownership and that McCrery told them that the annuity they applied for would be jointly-owned, she has produced no evidence to support these allegations.  Nor has she explained why, if McCrery did misrepresent the contents of the annuity application, Mr. Bagala did not cancel or amend the contract after it was issued.  The contract itself makes clear that Mr. Bagala owns the annuity and that there is no co-owner.  In addition, from the time the annuity was issued in July 2003 until Mr. Bagala's death in January 2014, Mr. Bagala received numerous quarterly statements, confirmations of transactions, and other correspondence, in which Merrill Lynch and Transamerica confirmed that Mr. Bagala was the annuity's only owner.  Importantly, the

annuity contract provided for a ten day period in which Mr. Bagala could have cancelled the contract and received a full refund.  It also expressly authorized Mr. Bagala to amend the contract by adding his wife as a co-owner. Furthermore, McCrery testified in his deposition that the Bagala's financial advisors at Merrill Lynch reviewed the annuity contract "every single year" and that "prior to [Mr. Bagala's] death, [Mr. and Mrs. Bagala] could have changed anything along the way since 2003."[51]  That Mr. Bagala nonetheless kept the contract in place and never modified its ownership terms belies Mrs. Bagala's claim that her husband intended to co-own the annuity.

For these reasons, Mrs. Bagala's claims are insufficient to create an issue of fact that mutual mistake or fraud caused the annuity contract to deviate from the parties' true intentions.  The Bagala children are entitled to summary judgment dismissing Mrs. Bagala's reformation claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Bagala children's motion for summary judgment.  Dena, Darlene, Dawn, and Buddy Bagala are

---

[51] *Id.* at 8.

the four beneficiaries of annuity contract M032084643, and Mrs. Bagala's claims to the death benefit proceeds are without merit.


New Orleans, Louisiana, this 29th day of December, 2015.


_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE